In Re FRATT'S ESTATE. ARNOLD et al., Executors, Respondents, v. MORRISSEY et al., Appellants.

(No. 4,420.)

(Submitted June 8, 1921. Decided July 1, 1921.)

[199 Pac. 711.]

*Estates of Deceased Persons—Executors and Administrators— Partial Distribution—Lapsed Legacies—Trusts—Income—Interest—Inheritance Taxes.*

Executors and Administrators—May not Petition for Partial Distribution.
1. While an executor (or administrator) may resist an application for partial distribution, in the absence of statute permitting him to petition for such distribution, he has no right to do so, the right to so petition being only conferred upon heirs, devisees and legatees by sections 7664 and 7669, Revised Codes, and the court was therefore without jurisdiction to entertain his petition.

Wills—"Devise"—"Bequest"—Definition.
2. A "devise" is a gift of real property, and a "bequest" a gift of personal property, by will.

Same—Lapsed Legacies Pass as Interstate Property.
3. *Held*, under section 4789, Revised Codes, that legacies to one who died before the testatrix, lapsed upon the latter's death, and were distributable to her heirs under the laws governing intestacy.

Same—Devises—Death of Devisee Before Death of Testator—Effect.
4. The word "devised" used in section 4758, Revised Codes, providing that if any estate is *devised* to any relative of the testator, and the devisee dies before the testator, leaving lineal descendants, they take the estate so given in the same manner the devisee would have done had he survived testator, *held* to mean a gift of real property by will, and not a gift of personal property.

Same—Trusts—When Beneficiary not Entitled to Interest or Income.
5. Where a will bequeathed $50,000 in trust to the niece of testatrix and devised to her also in trust certain city lots and $150,000 to be used for the erection of a business block thereon, she to receive the income from the building, the will providing that none of the bequests should bear interest, she was not entitled to any interest on the $50,000 until it was invested, and not to any income with

3. Effect of restrictive words or reference to specific property in residuary clause to limit scope of clause as regards lapsed or ineffectual legacies and devises, see note in 10 A. L. R. 1522.

On devolution of lapsed legacy or devise where will contains residuary clause, see notes in Ann. Cas. 1914C, 812; 44 L. R. A. (n. s.) 789.

4. Distinction between lapsed legacy and lapsed devise with respect to devolution, see note in Ann. Cas. 1914D, 719.

Time for taxing future estates under succession tax acts, see notes in 5 Ann. Cas. 237; Ann. Cas. 1916D, 309.

[60 Mont. 526.]

respect to the $150,000 until the building was erected and rentals received.

Estates of Deceased Persons—Partial Distribution—When Proper.

6. Where, on a petition for partial distribution, it was shown that there were no debts, that due notice to creditors of the estate had been given, that the time during which claims should be filed or presented had expired, and that the estate had funds and securities amply sufficient to cover a bequest to a niece in trust and the amount necessary to erect a building which the trustees were directed to construct on lots given her in trust, the lots, the amount of the bequest, and the amount needed to erect the building should have been set aside to the trustee, under section 7669, Revised Codes.

Same—Inheritance Tax—Life Estates—Remainder not Taxable, When.

7. Since inheritance taxes are not imposed upon the property which passes by will or succession, but upon the privilege of so taking, and a person cannot be taxed for more than he receives, where property was left to a niece for life, the remainder to go to her lineal descendants if she left any, and, if not, to others named, thus leaving it indeterminable in whom or when the remainder of the estate would vest, the remainder interests were not taxable to her, and she was only liable for the tax based on the value of her life estate.

*Appeal from District Court, Yellowstone County; A. C. Spencer, Judge.*

Proceeding by J. B. Arnold and another, executors, for partial distribution of the estate of Kate Fratt, deceased. From an order granting insufficient relief, Marguerite Morrissey and another appeal. Modified.

Cause submitted on briefs of Counsel.

*Mr. Geo. W. Pierson,* for Appellants.

The bequests made Annie Morrissey did not lapse. The will is silent as to disposition of bequests in event the beneficiary died before the testator, and the statute is appealed to in aid of the dispositions made. "When any estate is devised to any child, or other relation of the testator, and the devisee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will, in the same manner as the devisee would have done had he survived the testator." (Rev.

7. Method of determining value of interest of life beneficiary under inheritance tax laws, see note in Ann. Cas. 1914D, 77.

Codes, sec. 4758.) When the language of this section is considered in connection with the other provisions of the Codes, it includes personal property as well as real property. The terms "estate given by the will" employed in the section are not limited to real property. The testatrix did not provide that in the event of the death of the beneficiary, the portion willed such person should go to the residuary legatees.

In the construction of a will, the intention of the testator, as expressed, must prevail, and should control, if consistent with legal principles. (*Dean* v. *Crews,* 77 Fla. 319, 81 South. 479; *Gates* v. *Fisher,* 107 Misc. Rep. 53, 175 N. Y. Supp. 423.) "The purpose of the statutes to prevent lapses of a legacy or devise is not to defeat the will and intention of the testator, but to supplement and aid it." (Alexander on Wills, sec. 753.)

In our Codes the terms "devise" and "devisee," "legacy and legatee," are frequently coupled, but in no instance are any of the terms used singly for the purpose of conveying a distinctive meaning of one from the other. The word "devise" may technically apply to a gift of real property, but not always. It is frequently used in the same sense as "bequeath," both in statutes and in wills. (*Logan* v. *Logan,* 11 Colo. 44, 17 Pac. 99; *Kibler* v. *Huver,* 57 Hun, 14, 10 N. Y. Supp. 375; *Roundtree* v. *Pursell,* 11 Ind. App. 522, 39 N. E. 747, 749; *Evans* v. *Price,* 118 Ill. 593, 8 N. E. 854; *Rumel* v. *Solomon,* 54 Utah, 25, 180 Pac. 419.) "The statutes are to be construed with reference to the objects to be accomplished by them, and where a particular construction would lead to unreasonable results, a different construction is to be given, if it can be done without doing violence to the letter of the statute." (*Logan* v. *Logan,* 11 Colo. 44, 17 Pac. 101.)

The supreme court of California in construing section 1310, Civil Code, held the section did not include personal property. We respectfully submit in doing so the court not only violated well-recognized rules of construction, but successfully rebutted its reasoning by the significant remark, "It is strange that the legislature should have limited the application of section 1310

to devises alone.'' (*In re Ross' Estate,* 140 Cal. 282, 73 Pac. 976; *In re Lewis' Estate,* 39 Nev. 445, 4 L. R. A. 241, 159 Pac. 961.) The reasoning of the above cases of California and Nevada forces the conclusion that when a testator uses the term ''devise'' in his will, he may understand it includes personal property as well as real, but when he consults the statute to determine the force and effect of his will he must understand the term ''devise'' excludes the idea of personal property. Certainly this ought not to be.

If the one-sixth of the residue willed Annie Morrissey lapsed as to the personal property, then such portion does not go to the remaining beneficiaries, but goes to the heirs at law of the testatrix, and appellant is entitled to one-half. (Alexander on Wills, sec. 764; *In re Gorgas Estate,* 166 Pa. St. 269, 31 Atl. 86; *Church* v. *Church,* 15 R. I. 138, 23 Atl. 306; *Powers* v. *Godwise,* 172 Mass. 425, 52 N. E. 525; *Best* v. *Berry,* 189 Mass. 510, 109 Am. St. Rep. 651, 75 N. E. 743.)

There is no express provision in the will that the income of the sums on which Marguerite Morrissey is given the income shall go to any other person, and it would necessarily follow that the income passes to her inasmuch as it is not required for the payment of debts or expenses of administration. General legacies, when due, become a claim against the estate without an order of court providing for distribution, and they bear interest from the date they are due, and such interest is likewise a claim against the estate. (*Wormouth* v. *Gardner,* 112 Cal. 506, 44 Pac. 806.) The following authorities also sustain the rule that the income given dates from the death of the testator: (*Jesseph* v. *Westerberg,* 94 Wash. 602, 162 Pac. 1004; *Holiday* v. *Price,* 146 Ga. 782, 92 S. E. 533; *In re Franklin Trust,* 95 Misc. Rep. 71, 160 N. Y. Supp. 221; *Rachels* v. *Wimbish,* 31 Ga. 214; *Lawrence* v. *Littlefield,* 147 N. Y. Supp. 760; *In re Stanfield,* 135 N. Y. 292, 31 N. E. 1013; *Bank of Niagara* v. *Talbot,* 110 App. Div. 519, 96 N. Y. Supp. 976; *In re Flickwir's Estate,* 136 Pa. St. 374, 20 Atl. 518.)

In the absence of a clear direction to the contrary in the will, the beneficiaries have the same interest in the income, rents and profits of the property given to them as they have in the property itself. (40 Cyc. 1487.)

Under section 7724 of the Revised Codes the inheritance tax is computed upon the property passed by will or the intestate laws; where the title transferred is absolute the tax is computable on the principal, but when the will or conveyance only transfers a limited interest or an income therefrom, the tax is computed upon the value of such interest or income. The tax is not a levy upon the property, but on the right to take. (*Gelsthorpe* v. *Furnell*, 20 Mont. 299, 39 L. R. A. 170, 51 Pac. 267.) It necessarily follows that such tax is a personal obligation of the beneficiary to be computed on what the beneficiary in being is certain to receive. This idea is carried throughout the provisions of the statute, and is particularly manifested by the language used in sections 7725, 7729 and 7743, Revised Codes.

Under the terms of paragraph 11 of the will Marguerite Morrissey is given a life estate and the persons in whom the remainder may eventually vest are uncertain and are not in existence, and therefore the principal estate or remainder at this time has not vested, and there is no one in being against whom a claim for taxes upon the remainder could be made. The tax collectible at this time is upon the value of the life estate. (*In re Howell's Estate*, 69 N. Y. Supp. 1016; *Howe* v. *Howe*, 55 L. R. A. 626, 61 N. E. 225.)

*Messrs. Johnston, Coleman & Johnston*, for Respondents.

"A lapse most frequently occurs by reason of the death of the beneficiary before that of testator. At common law it was well settled that, in such a case as this, the devise or legacy lapsed." (Page on Wills, sec. 739; Jarman on Wills, Chap. 11; 40 Cyc., sec. 1508.)

Gifts to Annie Morrissey lapsed in so far as they apply to personal property. (*In re Ross' Estate*, 140 Cal. 282, 73 Pac.

976; *Estate of Claus Spreckels,* 5 Cof. Prob. Dec. 348; *In re Lewis' Estate,* 39 Nev. 445, 4 A. L. R. 241, 159 Pac. 961.)

Inasmuch as a certain sum is bequeathed to the trustee to pay the income to Miss Morrissey, and inasmuch as the executors are given a stated time in which to pay this bequest to the trustee and inasmuch as the will of Mrs. Fratt expressly declares that no bequest shall bear interest, Miss Morrissey does not become entitled to the payment of any income or interest until the same has actually been earned by the funds in the possession of the trustee. (*In re Brown's Estate,* 143 Cal. 450, 77 Pac. 160; *Paul* v. *Williams,* 59 Hun, 625, 13 N. Y. Supp. 701; affirmed in 136 N. Y. 644, 32 N. E. 1015; *Hawaiian Trust Co.* v. *Von Holt,* 216 U. S. 367, 54 L. Ed. 519, 30 Sup. Ct. Rep. 303 [see, also, Rose's U. S. Notes]; *Deal* v. *Schlomberg,* 20 Nev. 330, 22 Pac. 155.)

So far as we have been able to find, this court has never construed the inheritance tax law of this state as applied to a situation similar to that involved in the case at bar. Here all that is to be transferred to the appellant, Marguerite Morrissey, is the income from certain funds. The *corpus* of the legacies may eventually pass to her or her heirs, and it may not. Our inheritance tax statute is apparently very similar to, if not identical with, the former statutes of New York, and the courts of that state have passed upon the questions here involved many times. In addition to the cases cited by appellant, we would call the court's attention to *In re Hoyt,* 37 Misc. Rep. 720, 76 N. Y. Supp. 504, and *In re Howells' Estate,* 34 Misc. Rep. 432, 69 N. Y. Supp. 1016. Under these cases we are inclined to the same opinion as expressed in the brief of counsel for appellant that, at this time, the value of the legacies of income to Marguerite Morrissey should be appraised and inheritance tax paid upon the present values of such estates, and that the tax upon the subsequent estates in the trust fund bequeathed to the Merchants' National Bank can only be collected when such estates vest.

MR. COMMISSIONER JACKSON prepared the opinion for the court.

Appeal from an order directing partial distribution. The decedent disposed of her property by will, and among the beneficiaries thereunder were a sister, Annie Morrissey, and a niece, Marguerite Morrissey, daughter of Annie Morrissey, her only lineal descendant. The will gave to Annie Morrissey the sum of $15,000 and one-sixth of the residuary estate in equal shares with five others. Marguerite Morrissey's interest in the estate is shown by paragraphs 10 and 11 of the will, as follows:

"10. I give and bequeath to my said niece, Marguerite Morrissey, the sum of fifty thousand dollars, to be held in trust by the Merchants' National Bank of Billings, Montana, if said bank at the time this will is probated, or when requested to act as such trustee under this will, has then a trust department organized, officered, and equipped as required by the laws of the United States governing trust departments of national banks. Should said bank not have such trust department, then said sum is to be held in trust by my executors hereinafter named, or such other trustee as the court probating this will may appoint. Said sum of fifty thousand dollars is to be invested by said trustee subject to the approval of said court, and the income derived therefrom shall be paid to my said niece. When she reaches the age of thirty years, fifteen thousand dollars of said bequest is to be paid to her. At the age of thirty-five years, ten thousand dollars additional is to be paid to her out of said bequest. At the age of forty years, ten thousand dollars additional is to be paid to her out of said bequest. And the balance of said fifty thousand dollars is to be paid my said niece by said trustee when she reaches the age of forty-five years.

"11. I give, devise and bequeath to my said niece, Marguerite Morrissey, a life estate in and to lots numbered twenty-one, twenty-two, twenty-three, and twenty-four in block numbered fifty-seven of the original town, now city of Billings, in Yellow-

stone county, Montana, according to the official plat thereof on file and of record in the office of the county clerk and recorder of Yellowstone county, Montana, together with the tenements, hereditaments and appurtenances thereunto belonging and in and to not less than one hundred thousand dollars, or more than one hundred fifty thousand dollars, to be used in building a business block on said lots. Said lots and said money are to be held in trust for my said niece during her life time by the aforesaid trustee, which trustee shall contract for and cause to be erected a suitable business block on said lots, to cost not less than one hundred thousand dollars nor more than one hundred fifty thousand dollars, and the said trustee shall, after said building is erected, collect the rents therefrom and pay the net income therefrom to my said niece, so long as she shall live. Upon her death, said lots and building shall become the property of her children or their lineal descendants, if any. Should my said niece die without leaving any children or other lineal descendants, said lot and building shall then become the property of the children of my said brother, B. M. Sheehan, if any. In case of the death of any child of my said brother during the life estate of my said niece in said property, the share of said child in said property shall go to the lineal descendants, if any of such child. Said business block shall be known as and called 'Fratt Block.'

"In case my said niece and brother die without leaving any children or lineal descendants, then said lots and business block shall become the joint property of the corporation owning St. Vincent's Hospital at Billings, Montana, and the corporation owning the Kate Fratt Parochial School, hereinafter mentioned. The net income from said lots and building is to be divided equally between said hospital and school from time to time as the same is collected and accumulates, and shall be used by such corporations solely for that purpose, and not for the support or maintenance of any other properties which may be owned by either or both of such corporations."

Paragraph 20 of the will contains the following: "20. No property belonging to my estate shall be sacrificed in order to obtain the necessary money to pay any of the aforesaid bequests. My executors hereinafter named shall have five years, if necessary, within which to pay any and all of the aforesaid bequests. None of said bequests shall bear interest."

Annie Morrissey died prior to the death of the testatrix. During the course of administration the executors filed their petition, praying for an order directing partial distribution of the estate and asking the direction of the court with reference to the payment of interest, the legacy of Annie Morrissey, and as to whether or not the inheritance tax against the bequest in paragraph 11 of the will was to be paid out of the bequest or out of the residuary estate, and what sum of money should be paid by the executors to the trustee under paragraph 11 of the will. A petition for partial distribution was also filed by Marguerite Morrissey and the Merchants' National Bank of Billings, praying for an order that Marguerite Morrissey be entitled to receive and have distributed to her the sum of $15,000 bequeathed by the will to her mother, Annie Morrissey, and, as time and conditions permitted, that she have distributed to her the one-sixth of the remainder devised and bequeathed to Annie Morrissey; that Marguerite Morrissey and the Merchants' National Bank be entitled to, and have distributed to them, the sum of $200,000, together with the earnings and interest collected and received since the date of the death of the testatrix, January 1, 1918, on the sum of $200,000; that the real property mentioned in paragraph 11 of the will be set over and distributed to the petitioners.

A hearing was had on the petitions by the court without a [1] jury, at which oral evidence was produced. Under our statute the court should not have entertained the petition of the executors. Sections 7664 and 7669, Revised Codes, both provide that it is any heir, devisee or legatee who may present his or her petition, and, while the executor or administrator may appear and resist the application, nowhere is he given the

[60 Mont. 526.]

right to petition for partial distribution. This point is well settled under California statutes identical with ours. (*Estate of Letellier,* 74 Cal. 311, 312, 15 Pac. 847; *Alcorn* v. *Buschke,* 133 Cal. 655, 66 Pac. 15; *Estate of Young,* 149 Cal. 173, 85 Pac. 145.) The superior court in probate has no jurisdiction to entertain a proceeding for partial distribution on the petition of an administrator. A decree so rendered is void, as the statute authorizes the proceeding on the petition of an heir, devisee, or legatee only. (*Alcorn* v. *Gieseke,* 158 Cal. 396, 111 Pac. 98.) Therefore there was nothing before the court at the hearing but the petition of Marguerite Morrissey and the Merchants' National Bank and the oral testimony of two witnesses. Thereafter the court made findings of fact and conclusions of law, and they will be considered as having been made on matters that were properly before the court. The findings of fact, briefly, were:

That Annie Morrissey, a sister of Kate Fratt, was a beneficiary under her will, and that she died prior to the death of Kate Fratt, leaving Marguerite Morrissey, likewise a beneficiary under the will, as her sole surviving lineal descendant; that the Merchants' National Bank of Billings, Montana, was qualified under the provisions of the will, and had consented to act as trustee for the funds and property designated in the will; that notice to creditors had been duly given, and time for presentation of claim had expired; that all debts had been paid and the estate was ready for partial distribution; that certain devises and bequests were made in trust; and that the will provided none of the bequests should bear interest. Based upon the foregoing findings of fact, conclusions of law were given substantially as follows: That the executors should pay no interest upon the trust legacies from the date of the death of decedent; that the bequests and legacies in the will to Annie Morrissey lapsed by reason of her death prior to the death of the testatrix, but that the devise of her interest in the real estate did not lapse; that the executors should pay to the Merchants' National Bank, trustee, the sum of $150,000 as the

will provided; and that the inheritance tax against the bequest mentioned in paragraph 11 of the will should be paid out of the bequest itself and not from the residuary estate.

Marguerite Morrissey and the Merchants' National Bank excepted to the findings of fact and conclusions of law and moved the court to make additional findings and conclusions, which motion was denied, and the court made its order of partial distribution, in part as follows: " * * * It is ordered that no interest should be paid by said executors upon any legacy under said will, and in particular that no interest should be paid on the legacies mentioned in paragraphs 7, 10, 11, 12 and 15 of said will [legacies in trust] ; that the bequests and legacies mentioned in said will to Annie Morrissey lapsed by reason of her death prior to the death of Kate Fratt, and the one-sixth interest, mentioned in paragraph 19 [residuary estate] of said will, bequeathed to the said Annie Morrissey, deceased, lapsed by reason of her death prior to the death of Kate Fratt, deceased, in so far as the same applies to the personal property belonging to said estate, but not as to any interest in real estate devised to her by paragraph 19 of said will; that any such interest in real estate devised to her by the terms of paragraph 19 of said will is to be distributed to her daughter, Marguerite Morrissey; that the sum of $150,000 should be paid by said executors to said Merchants' National Bank of Billings, as trustee, under the provisions of paragraph 11 of said will, less the inheritance tax thereon; that each bequest, legacy, and devise, including said bequest of $150,000, shall pay its share of the state inheritance tax under the laws of Montana, instead of the whole of said inheritance tax being paid out of the residuary estate."

Five assignments of error are made, and they will be considered in order.

The contention is made that Marguerite Morrissey should succeed to the rights of her mother, Annie Morrissey, in the legacy of $15,000 bequeathed her by the will. To sustain this viewpoint necessitates doing violence to the clear, distinct,

[2] legal, and accepted definition of the words "devise" and "bequest." Bouvier defines "devise" as "a gift of real property by a last will and testament," and "bequest" as "a gift by will of personal property."

Undoubtedly the legislature, in framing our statutes, used [3, 4] both these words in their correct and approved legal and technical sense. A clear-cut distinction is apparent in the mere reading of sections 4758 and 4789, Revised Codes, cited by appellant. In the sections with reference to testamentary disposition of real property, viz., sections 4759, 4760, 4777, 4787, 4790, 4796, 4801, and 4804, the words "devise" and "bequeath" are both used. Sections 4778 and 4779 show unerringly the intent of the legislature and its careful discrimination in the use of the appropriate words.

"Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar or appropriate meaning or definition." (Sec. 8070, Rev. Codes.)

Under California statutes formerly identical with ours and under those of Nevada on this question, the courts held to the distinction and technical meaning. (*In re Ross' Estate,* 140 Cal. 282, 73 Pac. 976; *Estate of Spreckels,* 5 Cof. Prob. Dec. 348; *In re Lewis' Estate,* 39 Nev. 445, 4 A. L. R. 241, 159 Pac. 961.)

Accordingly the legacy of $15,000 and any residuary legacy to Annie Morrissey lapsed upon her death, and the bequests reverted to the estate of Kate Fratt, deceased. As to these legacies, decedent died intestate, and they must be distributed to her heirs under the laws governing intestacy.

With respect to the real estate, if there be any, contained in the residuary estate, Marguerite Morrissey succeeds to the interest of her mother. (Sec. 4758, Rev. Codes.)

The second assignment has been covered by what has already been said concerning the disposition of the entire interest in the estate had by **Annie Morrissey.**

Complaint is made that the order for partial distribution [5] deprives Marguerite Morrissey of the income given her under the terms of the will from the date of the death of the testatrix upon the sums of $50,000 and $150,000, respectively. Under paragraph 20' of the will, it is distinctly stated that "none of the said bequests shall bear interest."

The oral testimony at the hearing showed that the property of Mrs. Fratt at the time of her death consisted of notes, real estate and securities of different kinds. There were no funds set apart to place in the hands of the executors to carry out the bequests, and the trustee agreed to accept in partial payment of the trust funds under the will certain securities at a valuation of $195,115.28, in lieu of cash, so that partial distribution might be made.

The bequests to Marguerite Morrissey were neither simple bequests of income nor of income from specific property belonging to the estate. The incomes were those that would be derived from the investment of funds, subject to the approval of the court and from a building to be erected on certain property by the trustee.

Under the plain and unmistakable provisions of this will, no interest could be paid on the bequests, and Marguerite Morrissey is not entitled to any income or interest with respect to the sum of $50,000 until it is invested by the trustee and earnings accrued, and with respect to the building until it had been erected and an income derived therefrom.

We quote from *In re Brown's Estate,* 143 Cal. 450, 77 Pac. 160, decided under statutes identical with ours, and cited by respondents: "The appellant cites, in support of her claim to payment from date of death, section 1366 of the Civil Code, as follows: 'In case of a bequest of the interest or income of a certain sum or fund, the income accrues from the testator's death.' If this section was applicable, of course the appellant would be entitled to the monthly payments from the time of the death of the testatrix. But the bequest in this case was not of the interest or income of a certain sum to be paid by the

executors of the estate. The testatrix bequeathed the sum of $5,000 to certain trustees, and the monthly income was to be paid by the trustees, and not by the executors. Necessarily the trustees could not begin payment until they received the fund and invested it so as to produce an income. The intention of the testatrix must therefore have been that payments were not to begin until the fund from which it was to be produced was distributed to the trustees, who were to make the payments. The distinction is thus stated: 'Where he absolutely gives the beneficiary a given income, and merely indicates in his will the source from which it is to be obtained, the general rule is that the income in such case is to be estimated from the death of the testator. * * * But, where the bequest is only of the income to be obtained from a certain specified fund, * * * it is held that the beneficiary can receive only the actual income when received from such fund.' (Page on Wills, sec. 601.) A gift of an income from a certain fund is not an annuity, and interest does not begin thereon until one year from the death of the deceased. * * * As to the claim that she is entitled to interest on the $5,000 bequeathed to the trustee, we think that that is covered by the provision in the will that the executor should not be charged with interest upon any bequest therein made." (See, also, *Paul* v. *Williams,* 59 Hun, 625, 13 N. Y. Supp. 701; *Id.,* 136 N. Y. 644, 32 N. E. 1015; *Hawaiian Trust Co.* v. *Von Holt,* 216 U. S. 367, 54 L. Ed. 519, 30 Sup. Ct. Rep. 303; *Deal* v. *Schlomberg,* 20 Nev. 330, 22 Pac. 155.)

It is next claimed that the appellant's rights were prejudiced [6] by the court in failing to set aside the lots in which Marguerite Morrissey was given a life estate. Section 7669, Revised Codes, reads in part: "If at the hearing it appear that the estate is but little indebted, and that the share of the party applying may be allowed to him without loss to the creditors of the estate, the court or judge must make an order in conformity with the prayer of the applicant" requiring: (1) A bond in case there are debts, and, if there are none, and the

time for filing or presenting claims has expired, the bond will be dispensed with; (2) the executor or administrator to deliver to the heir, legatee, or devisee the proceeds of the estate to which she may be entitled, or only a part thereof, designating it."

Under the petition and oral testimony, it is shown that there are no debts; that due notice to creditors was given; that the time during which claims could be filed or presented had expired; that a suitable building would cost $150,000; and that the estate had funds and securities amply sufficient to cover the amount prayed for in the petition. Therefore, on this showing, we think the court should have set aside to the trustee, not only the real estate, but likewise the sum of $50,000 to be invested by the trustee, and the sum of $150,000 to erect the building.

Finally error is urged in that the court ordered that the [7] inheritance tax should be deducted from the trust funds set over to the bank, and that each bequest, legacy or devise should pay its share of the state inheritance tax, instead of the entire tax being paid out of the residuary estate.

The order is incomplete. The entire question, as stated by counsel, resolved itself into: Upon what sum should Marguerite Morrissey pay inheritance tax at this time? If she is obliged to pay tax on the value of the estate which passes to her, is the trustee bound at this time to pay tax on the remainder? Can the tax on the remainder only be collected when such remainder vests in the person who eventually shall receive the same?

Under section 7724, Revised Codes, all property which passes by will or the intestate law is subject to a tax. This tax is on the right to take by will or succession. "The burden of the tax is not imposed upon the property itself, but upon the privilege of acquiring property by inheritance. In nearly all inheritance tax laws the statutes provide for appraising property to be inherited, but the object of such valuation is not to tax the property itself. It is to arrive at and measure a

price by which the privilege of inheriting can be valued."
(*Gelsthorpe* v. *Furnell*, 20 Mont. 299, 39 L. R. A. 170, 51
Pac. 267.)

Marguerite Morrissey must pay for the privilege of inherit-
ing, but she cannot be called upon to pay more than that which
is measured by the value of her inheritance. Under section
7724, the lots and whatever sum the building costs must be
taxed. In accordance with section 7738, the value of the
beneficiary's interest under the tax to be paid is determined,
while section 7725 declares the tax shall be immediately due
and payable to the county treasurer, together with interest
thereon, and shall be and remain a lien on the property until
paid.

It cannot be determined at this time in whom or when the
remainder of the estate will vest. When Marguerite Morrissey
dies, the estate becomes the property of her children or their
lineal descendants. In case of no issue then it descends to the
children of B. M. Sheehan. If any of his children should
die during the life estate of Marguerite Morrissey, the share
of that child shall pass to its lineal descendants, and, if both
niece and B. M. Sheehan die without issue, it then becomes the
joint property of two corporations.

A similar situation is well analyzed under the former inherit-
ance tax statutes of New York, very similar, if not identical,
with our own: "The appraiser was unable to determine how
many persons might, under the terms of the will of the tes-
tator, at some future time acquire the remainder interests in
the estate, or who those persons might be, or in what pro-
portions they might take. The learned counsel for the comp-
troller does not suggest any answer to this difficulty, and the
specification of objection in his notice of appeal is that a tax
should have been imposed upon 'the remainder interests.'
Such a tax would clearly be on the property, and not on the
transfer. The difficulty is that no transfer of the untaxed
remainder interests has been effected. A method by which
ultimate ownership of those interests may be determined has

been indicated. A transfer has been initiated which will eventually be consummated in one of its several possible forms, but the title to the property after the expiration of the life estates of the widow and the four children of the testator has not yet been transferred to or vested in any person whomsoever. To constitute a transfer, there must be a transferee. To create a taxable transfer, there must be a person or corporation, capable of identification, who receives a transfer in such form that the tax on the transfer may be paid 'out of the property transferred.' In the present case the ultimate title to the remainder interests is 'in abeyance' and belongs to no one. They can be sold by no one, and no tax can be paid out of them by anyone. If it be said that a transfer has been effected to the trustees, the plain answer is that their title is measured by their trust duties and by the rights of the beneficiaries under the valid trusts, and ends where that of the ultimate remaindermen begins. The statute must be enforced according to its terms or not at all. Since the only tax is one upon transfers, no tax can be imposed or collected unless a transfer is shown, and all doubtful questions must be solved in favor of the taxpayer and against the state. (*In re McPherson,* 104 N. Y. 306, 10 N. E. 685; *In re Enston's Will,* 113 N. Y. 174, 3 L. R. A. 464, 21 N. E. 87; *In re Vassar,* 127 N. Y. 1, 27 N. E. 394.) By section 222 of the transfer tax law the executors are personally liable for any tax imposed, and they must pay it out of the property transferred. They must not pay it out of the property transferred to the life beneficiaries, either in whole or in part, for their interests have already been fully taxed. To make the payments out of the principal of the estate would be to deprive the life beneficiaries of the income which the amount of the tax would produce. The learned counsel for the respondent suggests cases where the extent of the very obvious wrong and hardship of such a payment would be even greater than in the present one, but the facts of the estate now before me are sufficient to call for the application of a legal principle. The tax is to be paid

[60 Mont. 526.]

'out of the property transferred,' and only one tax is to be charged upon one transfer. To compel one person to pay from his estate a tax, or even a small portion of a tax, properly chargeable against the estate of another, is to do a thing not justifiable upon principle, and not required by the statute. They may not pay it out of the remainder interests, for the reason that they have no control over such interests, and no power is to be found in the will or in the statute, or could be granted by any court, to sell such remainder interests for the purpose of paying the tax, and be relieved from personal liability for such sale. The fact that no appraisal of the remainder interests can now be made is less important than it would be if it were not for the fact that by section 222 of the transfer tax law, as amended in 1897, and as it stood at the time of the death of the decedent, the tax on the remainder interests 'shall accrue and become due and payable when the persons or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof.' The report of the appraiser and the order made thereon are affirmed, and the remainder interests, after the death of the widow and children of the decedent, are determined not to be taxable at the present time, but without prejudice to any proceeding for the taxation of such remainder interests, or any of them, when the persons eventually entitled thereto can be ascertained." (*In re Howell's Estate*, 34 Misc. Rep. 432, 69 N. Y. Supp. 1016; see, also, *In re Hoyt*, 31 Misc. Rep. 720, 76 N. Y. Supp. 504.)

We approve of the above reasoning and language, and think it applicable to the case before us. We therefore hold the remainder estate cannot be taxed at this time.

For the reasons herein stated, we recommend that the cause be remanded to the lower court, with directions to modify the order to the extent that the lots mentioned in the will and the sums of $50,000 and $150,000 be set over to the trustee; that appraisers be appointed by the court to properly appraise the value of the life estate of Marguerite Morrissey and estimate

the inheritance tax due thereon; and that it be ordered that no tax be levied at this time against the remainder estate.

MR. COMMISSIONER SPENCER, being disqualified, takes no part in the foregoing opinion.

PER CURIAM: For the reasons given in the foregoing opinion, it is ordered that the cause be remanded to the lower court, with directions to modify the order to the extent that the lots mentioned in the will and the sums of $50,000 and $150,000 be set over to the trustee; that appraisers be appointed by the court to properly appraise the value of the life estate of Marguerite Morrissey and estimate the inheritance tax due thereon; and that it be ordered that no tax be levied at this time against the remainder estate.

*Modified.*

